UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AUDIO EMOTION S/A, : 15 Civ. 5735

                Plaintiff, : **COMPLAINT**

      - against - : (Jury Trial Demanded)

MCINTOSH GROUP, INC. (d/b/a FINE SOUNDS : ECF CASE
GROUP),

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Audio Emotion S/A ("Audio Emotion" or "Plaintiff") by its undersigned attorneys, for its Complaint against Defendant McIntosh Group, Inc., doing business as Fine Sounds Group ("Fine Sounds" or "Defendant," and together with Plaintiff, the "Parties"), alleges upon knowledge as to itself and its own acts, and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

1. This complaint describes how Defendant, through the commission of willful acts and fraudulent misrepresentations of existing facts, deprived Plaintiff of valuable business opportunities and caused it damages of approximately $1,600,000. This action seeks compensatory and punitive damages in connection with Defendant's improper actions.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a)(1), in that Defendant Fine Sounds is resident in this judicial district.

## PARTIES

4. Audio Emotion is a company organized under the laws of Brazil whose offices are located at Rua Normandia 51, 04517-040 São Paulo, Brazil.

5. Defendant McIntosh Group, Inc., doing business as Fine Sounds Group, is a company organized under the laws of Delaware whose offices are located at 501 Madison Avenue, 5th Floor, New York, NY 10022.

## FACTS COMMON TO ALL CLAIMS

6. Plaintiff is a distributor of high-end audio products in Brazil with a showroom in São Paulo, Brazil.

7. Fine Sounds is a high-end audio equipment company based in New York, New York, that owns the audiophile brands McIntosh, Audio Research, Sonus Faber and Wadia. In February 2013, Audio Emotion entered into an agreement (the "Agreement") with Fine Sounds' predecessor company Fine Sounds S.p.A, an Italian company, to exclusively represent and distribute all Fine Sounds brands in Brazil. In April 2014, Fine Sounds management announced that it was acquiring the high-end audio distribution business from Fine Sounds S.p.A. and relocating this business to New York City. Fine Sounds was incorporated as a Delaware company on April 21, 2014 and registered itself as a foreign business corporation authorized to do business in New York with the New York State Department of State on March 6, 2015. Upon information and belief, Fine Sounds is a

continuation of Fine Sounds S.p.A. and therefore a successor company to Fine Sounds S.p.A.

8.  The Agreements was in the form of a letter stipulating that "[o]nce this agreement will be signed by Audio Emotion [], Fine Sounds group will revoke through its held firms, all commercial agreements with distributors that currently import its brands in[to] Brazil … [and] Audio Emotion agree[s] to distribute exclusively brands not in competition with Fine Sounds group brands."  The Agreement contemplated that the Parties would enter into a distribution agreement at a later date; however, Plaintiff and Defendant did not enter into another distribution agreement and the Agreement formed the basis of the commercial relationship between the Parties during the operative events as described herein.  By email dated February 27, 2013, Fine Sounds requested that Plaintiff sign the Agreement, stating, "We need to proceed."  Plaintiff signed the Agreement and sent the signed Agreement to Fine Sounds via email dated February 27, 2013.

9.  Pursuant to the Agreement, Audio Emotion made significant investments in order to grow the business, as it would become the exclusive distributor in Brazil for some of the most sough-after high-end audio equipment in the world.  Audio Emotion invested approximately $200,000 in marketing, $150,000 in refurbishing their showroom, and $700,000 in acquiring additional stock.

10.  Pursuant to the terms of the Agreement and as further agreed by the Parties, Plaintiff was to achieve certain sales targets for the years 2013 and 2014.  The original targets for 2013 were: €250,000 in Sonus Faber sales; $150,000 in Audio Research sales; and $350,000 in McIntosh sales.  For 2014, the original targets were: €500,000 in Sonus Faber sales; $250,000 in Audio Research sales; and $600,000 in McIntosh sales.

11. At the end of October 2013, Fine Sounds sent a representative for a 10-day visit to Brazil in order to conduct an analysis of the Brazilian market to the end of understanding whether the sales targets for the Brazilian market needed to be amended. After conducting his analysis, the representative—Giovanni Menato—concluded that "the Fine Sounds group original expectations regarding this market should be revised, in order to hopefully reach a sustainable growth, as soon as possible." Mr. Menato based his conclusions, *inter alia*, on: the high tariffs on audio equipment imported into Brazil; volatile social conditions, as represented by mass protests that occurred around the time of his visit; and unfavorable financing terms offered by local Brazilian banks.

12. Pursuant to Mr. Menato's recommendations, in November 2013 Audio Emotion and Fine Sounds agreed to amend the sales targets for 2013 and 2014. The revised targets for 2013 were: €200,000 in Sonus Faber sales; $90,000 in Audio Research sales; and $200,000 in McIntosh sales. For 2014, the revised targets were: €250,000 in Sonus Faber sales; $150,000 in Audio Research sales; and $350,000 in McIntosh sales.

13. On a conference call among Mr. Menato, Fine Sounds Sales Director Mirko Sanna, and Audio Emotion CEO Marcelo Getlinger in late November 2013, the two Fine Sounds officers confirmed to Mr. Getlinger that should Audio Emotion achieve the revised targets for 2013, then it would remain the exclusive distributor of Fine Sounds products for the whole of 2014. Upon receiving such a confirmation from Fine Sounds, Audio Emotion then commenced purchasing additional inventory from Fine Sounds based on the latter's recommendations.

14. By email dated November 27, 2013, Fine Sounds recommended to Plaintiff that it purchase tens of thousands of dollars in additional inventory in order to

4

achieve the revised sales targets for 2013. On November 29, 2013, Plaintiff ordered approximately $60,000 in new products from Defendant. By email dated December 3, 2013, Fine Sounds wrote to Plaintiff that in order to achieve the revised sales target of €200,000 for Sonus Faber products, it should purchase approximately €60,000 in inventory before the end of the year, recommending that it purchase a particularly expensive line of speakers. By email to Audio Emotion dated December 10, 2013, Mr. Sanna requested that Plaintiff place an order by that evening or the next morning. When Plaintiff raised its concerns to Defendant that it would prefer to hold off on acquiring the speakers suggested by Defendant until it had received a payment from a client, Fine Sounds responded in an email that not reaching the revised Sonus Faber target of €200,000 "could be a big problem for you."

15. All told, after receiving the assurance from Fine Sounds in November 2013 that it would remain the exclusive distributor of Fine Sounds products for the whole of 2014, Audio Emotion purchased approximately $230,000 of Fine Sounds inventory, which actually cost Plaintiff $460,000 because of Brazilian import tariffs. On December 23, 2013, Mr. Sanna informed Plaintiff that Mr. Menato had left the company. After Plaintiff had expressed disappointment over Mr. Menato's departure, Mr. Sanna responded in an email dated December 27, 2013, "Don't worry because we will improve the Brazilian market together."

16. Despite the fact that Plaintiff achieved the revised sales targets for 2013 under the Agreement, beginning in 2014, Fine Sounds took actions to unilaterally terminate the Agreement. By letter dated February 19, 2014, Fine Sounds acknowledged the Agreement and claimed that Audio Emotion did not achieve the agreed sales targets for 2013. Fine Sounds further requested that Plaintiff countersign the letter, which would then function as

an agreement to terminate the Agreement.  Audio Emotion refused to countersign the letter, maintaining that it was never in breach of the Agreement as Fine Sounds agreed to the revised sales targets.

17.     Rather than negotiate with Audio Emotion in good faith, Fine Sounds sent another letter to Plaintiff dated February 27, 2014, in which it unilaterally concluded that the Agreement was without any effect and that any relationship between Fine Sounds and Audio Emotion is terminated.

18.     Upon receipt of the afore-mentioned letter, Audio Emotion responded to Fine Sounds with three questions: a) what were the dollar values of the targets that Audio Emotion allegedly did not achieve; b) what documentation exists to support the sales figures they were relying on; and c) what compensation did they plan on paying Audio Emotion for their cancellation of the Agreement.  In their response to Plaintiff, Defendant cited purported sales figures that were not even present in the original Agreement or its amendment.  Finally, by email dated March 19, 2014, Fine Sounds notified Plaintiff that it would not accept any further orders after May 19, 2014.

19.     The representations by Fine Sounds to Audio Emotion in November 2013 that it would remain the exclusive distributor in Brazil for 2014 if it achieved the revised sales targets for 2013 was fraudulent, intended to induce Plaintiff into buying additional products from Fine Sounds, which actually had no intention of honoring the Agreement into 2014.  Indeed, in a recorded conversation between Mr. Sanna of Fine Sounds and Audio Emotion in February 2014, Mr. Sanna acknowledged the breach of the November 2013 agreement and that Fine Sounds was conducting negotiations with a Brazilian competitor of Plaintiff, this during a period when Fine

Sounds was pressuring Audio Emotion, both verbally and via e-mail, to acquire inventory under the Agreement.

20. Audio Emotion made significant investments in marketing, showroom improvements and inventory acquisition in reliance on Fine Sounds' representations and promises. Plaintiff reasonably estimates that it has incurred approximately 1.6 million dollars in direct damages as a result of Fine Sounds' actions in terminating the Agreement prematurely and without basis. In addition, Plaintiff forewent revenues that it expected to receive in 2014 based on its reasonable reliance on the promises of Fine Sounds and the terms of the Agreement.

### FIRST CLAIM FOR RELIEF BY PLAINTIFF
**(Breach of Contract)**

21. Plaintiff repeats and realleges the preceding allegations of this Complaint as if fully set forth herein.

22. Defendant has unlawfully failed to honor its obligations under the Agreement in improperly depriving Plaintiff of its exclusive distributor status even though Plaintiff has faithfully fulfilled its obligations thereunder.

23. By reason of the foregoing, Plaintiff has been damaged in a sum, to be proved at trial, of no less than $1,600,000, plus interest accruing from the date of breach.

### SECOND CLAIM FOR RELIEF BY PLAINTIFF
**(Fraudulent Inducement)**

24. Plaintiff repeats and realleges the preceding allegations of this Complaint as if fully set forth herein.

25. Through various communications, Defendant falsely represented to Audio Emotion that Plaintiff would remain the exclusive distributor of Fine Sounds products in Brazil for 2014 if it achieved the revised sales targets for 2013.

26. Defendant undertook these actions, extraneous and collateral to the Agreement, as part of its plan to induce Plaintiff to purchase more Fine Sounds inventory at the end of 2013 while it had no intention of keeping Audio Emotion as an exclusive distributor of its products in Brazil for the year 2014.

27. Plaintiff reasonably relied on the statements made by Defendant.

28. Plaintiff suffered damages as a result of having relied on the inducements made by Defendant.

29. As a result of the foregoing, Plaintiff is entitled to recover from Defendant amounts to be proven at trial for compensatory and punitive damages.

### THIRD CLAIM FOR RELIEF BY PLAINTIFF
**(Promissory Estoppel)**

30. Plaintiff repeats and realleges the preceding allegations of this Complaint as if fully set forth herein.

31. Defendant promised Plaintiff that it would remain the exclusive distributor of Fine Sounds products in Brazil for 2014 if it achieved the revised sales targets for 2013.

32. Defendant undertook these actions, extraneous and collateral to the Agreement, as part of its plan to induce Plaintiff to purchase more Fine Sounds inventory at the end of 2013 while it had no intention of keeping Audio Emotion as an exclusive distributor of its products in Brazil for the year 2014.

33. In reasonable reliance on these promises, Plaintiff made significant investments in marketing, showroom improvements and inventory acquisition.

34. In reasonable reliance on Defendant's clear promises, Plaintiff suffered damages.

35. As a result of the foregoing, Plaintiff is entitled to recover from Defendant amounts to be proven at trial for compensatory damages.

WHEREFORE, Plaintiff seeks judgment as follows:

A. Granting Plaintiff damages in an amount to be determined upon the proof submitted to the Court, but no less than $1,600,000.00 plus interest;

B. Granting Plaintiff the costs and disbursements of this action; and

C. Granting Plaintiff such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiff demands that its claims be tried by a jury pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38(b).

Dated: New York, New York
July 22, 2015

SELVARATNAM LAW OFFICE, PLLC

By:_____
Troy Selvaratnam (TS-1972)
The Woolworth Building
233 Broadway, Suite 2208
New York, NY 10279
(646) 206-2355
troy@selvaratnamlaw.us
*Attorneys for Plaintiff*